UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| QUINTERO HAYES, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>D. ZATECKY, )<br>)<br>Respondent. ) | No. 1:19-cv-04459-JMS-DLP |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Quintero Hayes' petition for a writ of habeas corpus challenges his conviction in prison disciplinary case ISR 19-01-0219. For the reasons explained in this Entry, Mr. Hayes' petition is **denied.**

**A. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

**B. Disciplinary Proceeding**

On January 28, 2019, Indiana Department of Correction (IDOC) Correctional Officer A. Parrott wrote a Report of Conduct charging Mr. Hayes with a violation of Code 102, battery, as follows:

> On 1/28/2019 at approximately 8:55 PM I officer A. Parrott was walking down the 6C range when Officer C. Burton was escorting Offender Hays, Quintero #213543 down the range for a shower. As Offender Hays #2[1]3543 passed I stopped so he could get by and he Purposely shoulder bumped me with his left shoulder on my right shoulder.

Dkt. 12-1 (errors in original).

On January 31, 2019, Mr. Hayes received a Notice of Disciplinary Hearing Screening Report notifying him of the charge. Dkt. 12-2. He pled not guilty, requested a lay advocate, asked to call two inmate witnesses, and requested the video of the incident. *Id.*

Offender Martin provided the following statement:

> There was a bunch of people walking on the range and I never seen the inmate Hayes hit or shove the c/o – He did stumble on the messed up tile and almost fall around my cell – I never seen him batter anyone.

Dkt. 12-7.

Offender Turner provided a statement that there were a least four other people going in the opposite direction, and that Mr. Hayes accidently bumped into whoever was there. Dkt. 12-8.

Officer C. Burton provided a statement as follows:

> On 1/28/2019 at approximately 8:55 PM I, Officer C. Burton was escorting Offender Hays, Quintero #213543 down the 6C range for a shower. As Offender Hayes passed Officer A. Parrot, he purposely assaulted Officer A. Parrott on her right shoulder with his left shoulder. I, Ofc. C. Burton, then escorted Ofd. Hayes back to cell 16-6c with no further incident.

Dkt. 12-6.

The disciplinary hearing officer (DHO) determined that allowing Mr. Hayes to view the video would jeopardize the safety and/or security of the facility. Dkt. 12-5. The DHO prepared a summation of the video on February 4, 2019.

> Upon reviewing the incident that occurred for case ISR 19-01-0219 I, Officer C. Cooke, did see:
>
> 9:05 pm Custody staff is escorting offender Hayes down the range to shower area. Another offender with custody staff is behind them, officer Parrot is walking towards them.
>
> 09:05:52 Officer Parrot moves to her right to allow passage for offender Hayes and custody staff escorting him. Offender Hayes moves to his left (he is facing Officer Parrot).
>
> 09:05:52 Offender Hayes makes contact with Officer Parrot with his left shoulder, on her right shoulder. Officer Parrot is seen reacting to the shoulder contact be being moved and her body swinging back.
>
> 09:05:53 Officer Parrot and other custody staff react to the shoulder strike
>
> 09:05:54 Offender Hayes looks intently ahead of him, he does not try to pardon his sudden movement and shoulder strike of Officer Parrot
>
> 09:06:03 Escorting custody staff turn offender Hayes around and secures him back in his cell.

*Id.* (errors in original). The DHO noted that Mr. Hayes was unable to sign the copy of the video summary due to security but indicated he received it on February 4, 2019 at 9:46 a.m. *Id.*

Mr. Hayes' disciplinary hearing was held on February 5, 2019. Dkt. 12-4. The report noted that Mr. Hayes was asked during the hearing if he had reviewed the video and he stated "yes." *Id.* Mr. Hayes stated that he "did bump her, there were 5 people on the range" and he "didn't do it intentional." *Id.* The DHO reviewed the conduct report, statement of offender, evidence of witnesses, the still photographs from the video, and the video of the incident and found Mr. Hayes guilty. *Id.* The DHO explained in her reason for decision that Mr. Hayes stated he did review the video, the conduct was clear that the offender had enough room to walk down the hallway without

3

making contact, and that the contact looked intentional. *Id.* The DHO recorded that when the hearing was complete, Mr. Hayes stated: "I'm gonna tell them I never got my video! I'll win that on appeal!" *Id.* Mr. Hayes' sanctions included a deprivation of 365-days' earned credit time and a two-step demotion in credit class. *Id.*

Mr. Hayes appealed to the Facility Head and the IDOC Final Reviewing Authority, but neither appeal was successful. Dkt. 12-9; dkt. 12-10. He then filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. 1. The respondent filed a return on January 31, 2020. Dkt. 12. Though the Court granted Mr. Hayes an extension through March 27, 2020, to file a reply, he did not do so. Dkt. 19.

### C. Analysis

Mr. Hayes raises five grounds in his petition: (1) he was denied a fair hearing before an impartial decision maker because the DHO lied about him being able to review the video evidence before the hearing; (2) the DHO was not impartial because she considered his statement regarding an appeal in finding him guilty; (3) he should not have been charged with a violation of Code 102, but a Code 212; (4) he was denied the video evidence he requested; and (5) the DHO forged and falsified evidence to cover up Mr. Hayes not receiving video evidence. Dkt. 1 at 4-7. The Court restates these grounds as challenges to the impartiality of the DHO; (2) denial of evidence; and (3) sufficiency of the evidence.

#### 1. Impartial decision maker

Mr. Hayes asserts multiple ways he believes the DHO was not impartial at his disciplinary hearing, none of which are successful. A prisoner in a disciplinary action has the right to be heard before an impartial decision maker. *Hill*, 472 U.S. at 454. However, hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*,

342 F.3d 660, 666 (7th Cir. 2003); *see Perotti v Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Moreover, the "constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the prison. *Piggie*, 342 F.3d at 666. The presumption is overcome—and an inmate's right to an impartial decision maker is breached—in rare cases, such as when the hearing officer has been "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

Mr. Hayes contends that the DHO lied when she indicated that he was provided with and had reviewed the video review form.[1] Dkt. 1. He further alleges that the DHO falsified the documents[2] in the record to cover up his failure to see the video or obtain a copy of its summation. *Id.* The DHO attested that she prepared a video evidence review form and had unit Officer Conde deliver the form to Mr. Hayes – due to a security threat – while she watched from the end of the range. Dkt. 12-12, ¶¶ 4-5. The record reflects that Mr. Hayes received the form at approximately

---

[1] The Court notes that the disciplinary hearing report states that the DHO asked Mr. Hayes if he reviewed the "video," and he stated "yes." Dkt. 12-4. The DHO's use of the word "video" reasonably could not have meant the actual video, as she had determined that the petitioner's viewing of the actual footage would jeopardize safety and security of the facility. Dkt. 12-5. The DHO explained in her affidavit that at the hearing she was referring to the video evidence review form. Dkt. 12-12, ¶ 8. Mr. Hayes' arguments that this creates an inconsistency rendering her biased are without merit.

[2] Mr. Hayes compares two copies of the video evidence review form, Exhibits H and J. Dkt. 1 at 7; dkt. 12-10 at 7-8. The respondent states that Exhibit H is likely the copy saved in the case file and administrative record with the DHO's notes that Mr. Hayes was unable to sign it due to security reasons, and that Exhibit J is likely the copy that Officer Conde left with Mr. Hayes. Dkt. 12 at 13. The DHO attested to bringing a copy of the review form to the hearing for Mr. Hayes but that he came with his own. The Court finds Mr. Hayes' comparison of these documents does not show falsification or forgery on the part of the DHO, and as such, Mr. Hayes' arguments are without merit.

5

9:46 a.m. the day before the hearing and indicated he had reviewed it at the beginning of the hearing. *Id.*, ¶ 6; dkt. 12-4; dkt. 12-5. The DHO further stated that she had a copy of the form to provide to Mr. Hayes at the hearing but "he had the original copy that was delivered to him by Officer Conde the day before." Dkt. 12-12, ¶ 8. Mr. Hayes did not raise issues with the video review until after the hearing in request for interview forms to the DHO and Officer Conde.[3] Dkt. 12-10. The DHO informed him she had pulled the video and confirmed that Officer Conde had delivered the form to him and attached a copy of Mr. Hayes affirming his review of it at the hearing. *Id.*; Dkt. 12-12, ¶ 10.

      Mr. Hayes argues that the DHO improperly considered his statement about raising an issue with not receiving the video in his appeal and that he would win, in her decision to find him guilty of battery. The DHO's documentation indicates this comment was made after the hearing had concluded. She attested that she "had already determined that Hayes was guilty . . . and read the sanctions off to him" but that she recorded the statement if he were to raise an appeal "based on a false statement." Dkt. 12-12, ¶ 9. The DHO stated a basis for her decision that the conduct was clear from the video that Mr. Hayes had enough room to avoid making contact with Officer Parrott and the action looked intentional. Dkt. 12-4. There is nothing in the record, nor has Mr. Hayes provided evidence, other than his own assumption, to indicate that the DHO considered the

---

[3] The Court notes that the respondent challenges the authenticity of Mr. Hayes' request for interview to Officer Conde as the handwriting is similar to Mr. Hayes' handwriting, the officer's supervisor was referred to by a nickname and not his full name, and the officers at the facility are able to deliver and obtain evidence in prison disciplinary cases. Dkt. 12 at 9-10. The Court acknowledges the respondent's argument but need not make a determination on the authenticity of this document as the Court finds enough information in the record, via the DHO's documentation, the video review form, and Mr. Hayes' admission at the hearing, that Mr. Hayes was able to review a summation of the video. The Court does caution the petitioner about the severity of presenting forged or falsified documentation to the Court. In addition, in the event Mr. Hayes was not provided with the review form, the video did not amount to a denial of material and exculpatory evidence.

statement Mr. Hayes made *after* the hearing in her decision. Her notation of the statement does not illustrate bias.

The Court finds no evidence in the record that suggests that the DHO directly or substantially participated in the factual events or investigation underlying Mr. Hayes' disciplinary charge. Accordingly, he is not entitled to habeas relief on this ground.

### 2. Denial of evidence

Though there is evidence in the record to support that Mr. Hayes was provided with the video review, any factual dispute about the video review does not save Mr. Hayes' argument that he was denied evidence.

The prison staff is not required to produce to a petitioner video footage. The record shows that Mr. Hayes was not allowed to review the actual video due to safety and security concerns. Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780-81 (7th Cir. 2008). When prison administrators believe a valid justification exists to withhold evidence, "'due process requires that the district court conduct an in camera review' to assess whether the undisclosed [evidence] is exculpatory." *Johnson v. Brown*, 681 F. App'x 494, 497 (7th Cir. 2017) (quoting *Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003)). As the petitioner, it is Mr. Hayes' burden to establish that any evidence he was denied was material and exculpatory. *See Piggie,* 344 F.3d at 678 (noting the petitioner did not "explain how [the requested witness's] testimony would have helped him" and thus "the district court properly denied relief" on the petitioner's claim that he was wrongfully denied a witness).

Mr. Hayes contends the video evidence would have helped him prepare a defense and would have shown the number of people on the range and that his actions were accidental, not intentional. Dkt. 1; dkt. 12-2. Video of the incident existed in this case and depicts a different story. The DHO reviewed the video and wrote a summation before the hearing. The Court finds the DHO's summation depicts an accurate account of the incident as the video shows that Mr. Hayes had room to move down the range without making contact with Officer Parrott, he made contact with her shoulder, the officers visibly reacted to the shoulder strike, and Mr. Hayes did not attempt to "pardon his sudden movement and shoulder strike." Dkt. 12-5. The DHO's review of the video interpreted Mr. Hayes' conduct as intentional. The Court has reviewed the *ex parte* filing of the video at docket 15 and finds no exculpatory evidence.

Accordingly, habeas relief on this ground is **denied.**

### 3. Sufficiency of evidence

Mr. Hayes contends that he was charged incorrectly with a violation of Code A-102, battery, because he did not batter anyone with a weapon or bodily fluid and did not cause serious injury. Dkt. 1 at 5.

Courts may not reweigh evidence already presented at a prison disciplinary hearing. *Viens v. Daniels*, 871 F.2d 1328, 1328 (7th Cir. 1989). Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274 (7th Cir. 2016); *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v.*

*Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. The conduct report "alone" can "provide[ ] 'some evidence' for the . . . decision." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). Nonetheless, in a safeguard against arbitrary revocation of an inmate's good-time credits, a court must "satisfy [itself] that the evidence the board did rely on presented 'sufficient indicia of reliability.'" *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). To challenge the reliability of evidence introduced during a prison disciplinary hearing, there must be "some affirmative indication that a mistake may have been made." *Webb v. Anderson*, 224 F.3d 649, 653 (7th Cir. 2000).

Offense Code A-102, is defined as "[k]nowingly or intentionally touching another person in a rude, insolent, or angry manner; or in a rude, insolent, or angry manner placing any bodily fluid or bodily waste on another person." Dkt. 12-11 at 1. This definition and categorization existed prior to and at the time of Mr. Hayes' conduct and conviction. Proceeding under this definition, the Court finds that some evidence exists to support the DHO's decision that Mr. Hayes battered Officer Parrott when he intentionally ran into her shoulder in a rude, insolent, or angry manner. Officer Parrott's conduct report alone states that Mr. Hayes purposefully bumped her with his left shoulder, and this by itself is sufficient under the "some evidence" standard." However, additional evidence of video, still photographs, and another officer's witness statement provide further corroboration sufficient to support the finding of guilt.

Accordingly, Mr. Hayes is not entitled to habeas relief on this ground.

### D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558.  There was no arbitrary action in any aspect of the charge,

9

disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Hayes to the relief he seeks. Accordingly, Mr. Hayes' petition for a writ of habeas corpus must be **denied** and the **action dismissed.**

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 10/13/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

QUINTERO HAYES
213543
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Abigail Recker
INDIANA ATTORNEY GENERAL
abigail.recker@atg.in.gov